D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RODOLFO URENA CORRAL and
MARIA URENA,

                       Plaintiffs,

                  - against -

THE OUTER MARKER
GLOBAL STEEL, INC.,
THE COUNTY OF SUFFOLK,
JAMIN JACKSON d/b/a JACKSON STEEL,
CESAR PINEDA d/b/a HORIZON ERECTORS, and
PARK LINE ASPHALT MAINTENANCE INC.,

                       Defendants.
-------------------------------------------------------------------X

**ORDER**
10-CV-1162 (SJF) (ARL)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★  SEP 2 0 2011  ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

       On March 3, 2010, plaintiffs Rodolfo Urena Corral ("Corral") and Maria Urena (together,

"plaintiffs") commenced this action for damages arising from Corral's alleged injury at a

construction site and Maria Urena's loss of consortium as a result of that injury. Before the

Court are motions for summary judgment filed by defendants The Outer Marker, Park Line

Asphalt Maintenance, Inc. ("Park Line"), and Suffolk County (the "County") (together,

"defendants"). For the reasons that follow, defendants' motions are granted.

I.     Background.


   A.     Factual Background

       The complaint alleges that on November 28, 2009, Corral was employed as a construction

worker on a large metal frame airplane hangar at the Francis S. Grabeski Airport in Westhampton

Beach, New York ("the Airport"), and was severely injured while using a defective "hoist or

lift." Second Amended Complaint ("Compl.") ¶¶ 1, 21, 27, 31, 33, 37.

       Defendant Suffolk County owned the land on which the airplane hangars were being

constructed. (Plaintiffs' Counter-Statement of Material Facts ["Pl. 56.1 Stmt."], ¶ 2). Defendant

The Outer Marker leased the land from the County, including the "right to construct and operate

the airplane hangars and appurtenant equipment and taxi ways." Id. at ¶ 5. The Outer Marker

was created for the purpose of leasing the land and constructing the airplane hangars, and is

owned by Richard Mailand and Robert Mailand. (The Outer Marker and Park Line's Statement

of Undisputed Facts ["Def. 56.1 Stmt."], ¶ 11).

       Park Line, which is also owned by Richard Mailand and Robert Mailand, was the general

contractor for the project. Def. 56.1 Stmt., ¶ 12. Richard Mailand hired Jackson Steel – which is

owned by Jamin Jackson,[1] Def. 56.1 Stmt., ¶ 14 – to erect the two airplane hangars, Pl. 56.1

Stmt., ¶ 11, but "Jamin Jackson and/or Jackson Steel subcontracted the steel erection project for

The Outer Marker to Cesar Pineda and/or Horizon Erectors." Def. 56.1 Stmt., ¶ 19. Cesar

Pineda, who did business as "Horizon Erectors," Pl. 56.1 Stmt., ¶ 8, hired five individuals to

_____

       [1]Based upon a Bankruptcy Court proceeding involving Jamin Jackson, the trial and
pending summary judgment motion as to Jamin Jackson were stayed. See Docket No. 111.

actually build the hangars: Corral, Elmer Pineda, Marcelo Pineda, Artemio Mendoza, and Israel Hernandez. Pl. 56.1 Stmt., ¶ 10. Each of the five workers claimed to be the sole proprietor of an individual business entity. Pl. 56.1 Stmt., ¶ 8.

Plaintiffs premise liability upon the moving defendants based upon allegations that the Airport was "owned and operated" by Suffolk County, Compl. at ¶ 21, leased to The Outer Marker, id. at ¶ 22, and Park Line was a contractor for the project, id. at ¶ 28.

In order to assist in the construction of the hangars, Jamin Jackson ordered "mechanized equipment" for use by the workers, which included a JLG boom elevated work platform (the "lift"). Pl. 56.1 Stmt., ¶ 14; Def. 56.1 Stmt. 56.1, ¶ 27. According to plaintiffs, the lift "is a self-propelled four-wheel drive basket lift equipped with a 60 foot extending boom." Plaintiffs' Br. at 10. A "steel rail-enclosed work platform, also known as a basket or turret" is attached to the end of the boom. Id. The basket's "control panel" includes two "joysticks." Id. The left joystick, which moves the basket up and down, contains a "lockout safety mechanism" designed to prevent the basket's movement "unless a spring-loaded lockout ring on the joystick is first lifted up." Id. A "floor pedal" must also be depressed in order for any of the controls to function. Id.

Plaintiffs claim that the lockout safety mechanism on the left joystick was broken at the time of Corral's accident, and that Corral "was injured because the joystick was activated inadvertently while the foot pedal was pressed." Id. at 15. According to plaintiffs, Corral was pinned between a horizontal railing above the machine's controls and the horizontal girt in the hangar. See Plaintiff's Br. at 12.

According to the declaration of Israel Hernandez, a worker at the site, the left joystick

3

was "cracked from the beginning when it arrived at the airport," and "had a circular, wide and deep hole in the cap." Plaintiffs' Ex. 6 at ¶ 10. Similarly, Elmer Pineda, another worker, testified at his deposition that there was a hole in the left joystick, which "ha[d] always been there." Plaintiffs' Ex. 5, 41:12-13. Mr. Hernandez states that the control joysticks had "problems," Plaintiffs' Ex. at ¶ 8, that "the safety on the left joystick was not in good working order," id. at ¶ 11, and that lifting the safety "did not prevent the basket from moving," id. Elmer Pineda testified that he did not need to lift the lockout ring when he freed Corral from the basket at the time of the accident. Plaintiffs' Ex. 5, 41:18-42:14.

Plaintiffs' expert, Russ Rasnic, submitted a "Preliminary Report" dated May 14, 2011, in which he opined that the accident was caused by "the failure to properly maintain safety devices designed to prevent the BOOM ELEVATION/TURRET ROTATION controls from being inadvertently actuated." Plaintiffs' Ex. 10A, at 3. In support of that conclusion, Mr. Rasnic cited his "inspection" of the machine on April 28, 2011, well over a year after the accident occurred. Mr. Rasnic stated that, at the time he tested the machine, the "lockout ring was not functioning on the BOOM ELEVATION/TURRET ROTATION controller." Id. at 14.[2]

On August 26, 2011, defendants filed their motions for summary judgment.[3]

_____

[2]       After the close of discovery, Mr. Rasnic subsequently submitted a "Supplemental Report," dated July 6, 2011. Because this report was untimely, the Court previously ruled that the report and any testimony arising from it would be disregarded. Docket Entry No. 144.

[3] The procedural history of this case is discussed in the Court's order dated September 1, 2011 [Docket Entry No. 144 at pp. 2-3].

4

II.     Discussion.

    A.     Summary Judgment Standard

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Wilson v. Northwestern Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

    "In order to defeat a motion for summary judgment supported by proof of facts that would

5

entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. * * *. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible * * *, or 'upon the mere allegations or denials of the [nonmoving] party's pleading,' Fed.R.Civ.P. 56(e)." Id. (citations omitted).

B.     New York State Labor Law § 240(1)

Plaintiffs' first cause of action alleges that defendants violated New York State Labor Law § 240(1) by failing "to construct, place, and operate proper safety equipment" at the Airport work site. Compl., ¶¶ 34-42.

Section 240(1) of the New York Labor Law "imposes absolute liability on owners or contractors or their agents for injuries proximately caused by a failure to provide safety devices necessary for protection to workers subject to the risks inherent in elevated work sites." Agric. Ins. Co., Inc. v. Ace Hardware Corp., 214 F.Supp.2d 413, 417 (S.D.N.Y. 2002) (internal quotation marks omitted). The provision is intended to protect workers from "elevation-related hazards," Henry v. Eleventh Ave., L.P., 87 A.D.3d 523, 928 N.Y.S.2d 72, 73 (2d Dep't 2011), and is designed to "shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person*," id. (quoting Ross v. Curtis-Palmer Hydro-Elec. Co., 81 N.Y.2d 494, 501, 601 N.Y.S.2d 49, 618 N.E.2d 82 (1993) (emphasis in original)). The New

6

York Court of Appeals has held that the protections of section 240(1) apply "only to a narrow class of special hazards." Nieves v. Five Boro Air Conditioning & Refrigeration Corp., 93 N.Y.2d 914, 915-16, 690 N.Y.S.2d 852, 712 N.E.2d 1219 (1999). "The core objective of the statute in requiring protective devices for those working at heights is to allow them to complete their work safely and prevent them from falling." Id. at 916, 690 N.Y.S.2d 852, 712 N.E.2d 1219.

The record does not suggest that Corral's accident was caused by one of the "special hazards" contemplated by the statute. Corral did not fall from the aerial lift. At the time of the accident, Mr. Corral's "head and shoulders were caught between the horizontal railing above the controls and the horizontal 'girt' above him." Plaintiff's Br. at 12. Indeed, when Elmer Pineda reached him, Mr. Corral's foot was still touching the pedal, and his "chest was slumped over the controls." Id. Because Mr. Corral's accident was not the result of an "elevation-related hazard," as the term is used by the statute, section 240(1) does not apply to this case, and summary judgment as to plaintiffs' first cause of action is granted. See, e.g., Mancuso v. M.T.A. New York City Transit, 80 A.D.3d 577, 578, 914 N.Y.S.2d 283 (2d Dep't 2011) (dismissal of § 240(1) claim appropriate because plaintiff did not fall from aerial lift); Tsatsakos v. Citicorp, 295 A.D.2d 500, 501, 744 N.Y.S.2d 475 (2d Dep't 2002); White v. Sperry Supply and Warehouse, Inc., 225 A.D.2d 130, 133, 649 N.Y.S.2d 236 (3d Dep't 1996) (statute requires "connection between [an] accident and the force of gravity").

7

C.    New York State Labor Law § 241(6).

Plaintiffs' second cause of action alleges that defendants violated section 241(6) of the New York State Labor Law.  Compl. ¶¶ 43-51.  Section 241(6) "requires owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor."  Ross, 81 N.Y.2d at 501-02, 601 N.Y.S.2d 49, 618 N.E.2d 82.  This duty is nondelegable.  Comes v. N.Y. State Elec. and Gas Corp., 82 N.Y.2d 876, 878, 609 N.Y.S.2d 168, 631 N.E.2d 110 (1993).

However, "there is no direct claim for a violation of § 241(6) itself";  plaintiffs must prove there was "a violation of one of [the statute's] implementing regulations."  Lamela v. City of New York, 560 F.Supp.2d 214, 226 (E.D.N.Y. 2008).  The implementing regulation alleged to have been breached must be a "specific, positive command," not a mere "reiteration of common-law standards."  Ross, 81 N.Y.2d at 502, 601 N.Y.S.2d 49, 618 N.E.2d 82.  A regulation that does not mandate compliance with "concrete specifications" does not give rise to this nondelegable duty.  Id. at 505, 601 N.Y.S.2d 49, 618 N.E.2d 82.

In their opposition to the instant motion, plaintiffs rely upon two (2) such implementing regulations: 12 N.Y.C.R.R. § 23-9.2(a) and 12  N.Y.C.R.R. § 23-9.6(a).[4]

---

[4]Although the Second Amended Complaint alleges violations of a number of Industrial Code provisions, plaintiffs refer to only §§ 23-9.2(a) and 9.6(a) in their opposition.  The Court considers those remaining claims to have been abandoned.  Anti-Monopoly, Inc. v. Hasbro, Inc., 958 F. Supp. 895, 907 n. 11 (S.D.N.Y. 1997) ("[U]nder New York state law, the failure to provide argument on a point at issue constitutes abandonment of the issue.").

1.      12 N.Y.C.R.R. § 23-9.2(a).

12 N.Y.C.R.R. § 23-9.2(a) states as follows:

"(a) Maintenance.  All power-operated equipment shall be maintained in good repair and in proper operating condition at all times.  Sufficient inspections of adequate frequency shall be made of such equipment to insure such maintenance.  Upon discovery, any structural defect or unsafe condition in such equipment shall be corrected by necessary repairs or replacement.  The servicing and repair of such equipment shall be performed by or under the supervision of designated persons.  Any servicing or repairing of such equipment shall be performed only while such equipment is at rest."

The New York Court of Appeals has found that this regulation is sufficiently specific, and therefore enforceable, to the extent that it places an affirmative duty on employers to correct any structural defect or unsafe condition in equipment or machinery upon "discovery." Misicki v. Caradonna, 12 N.Y.3d 511, 521, 882 N.Y.S.2d 375, 909 N.E.2d 1213 (2009). Thus, "an employee who claims to have suffered injuries proximately caused by a previously identified and unremedied structural defect or unsafe condition . . . has stated a cause of action under Labor Law § 241(6) based on an alleged violation of 12 N.Y.C.R.R. 23-9.2(a)." Id.

However, the regulation requires an employer to have received actual notice of a defect or unsafe condition in order to be held liable.  Id.  Plaintiffs have failed to raise a triable issue of fact as to whether Corral's employer had actual notice of any alleged defect in the lockout safety mechanism.

Plaintiffs fail to identify any evidence that Mr. Corral's employer, Cesar Pineda (who did

9

business as "Horizon Erectors"), Pl. 56.1 Stmt., ¶ 8, received actual notice of any defect in the

aerial lift.  Plaintiffs note that Cesar Pineda "was never present at the worksite prior to the date of

the accident," but argue that another member of the work crew, Marcelo Pineda, essentially acted

as Cesar Pineda.  Plaintiffs' Br. at 9, 20.  Although The Outer Marker and Park Line admit that

Marcelo Pineda was "considered to be the supervisor" of the crew, Def. 56.1 Reply Stmt., p. 33,

there is no admissible evidence that Marcelo Pineda had actual notice of a defect in the lockout

safety mechanism.

      In support of their claim that "Marcelo Pineda knew . . . that the safety interlock did not

function," Pl. 56.1 Stmt. ¶ 57, plaintiffs rely on Mr. Hernandez's hearsay declarations, in which

he states that "I remember specifically that Marcelo told me that the two joysticks and their

safeties were not in good working order and therefore I should take more precaution when I

operated the machine," Plaintiffs' Ex. 6, ¶ 12, and "Marcelo replied that he noticed the control

had a defect," Plaintiffs' Ex. ¶ 9.  See Marvel Worldwide, Inc. v. Kirby, 777 F.Supp.2d 720, 730

(S.D.N.Y. 2011) ("In opposing a motion for summary judgment, the non-movant may not rely on

inadmissible evidence, such as hearsay, to create a disputed issue of fact.").  Although plaintiffs

also cite to the deposition testimony of Elmer Pineda, Plaintiffs' Ex. 5, Elmer Pineda's testimony

actually undermines the contention that Marcelo Pineda was aware of the condition.  Plaintiffs'

Ex. 5, 70:13-20, 75:7 (noting that he never mentioned the condition of the joystick to Marcelo

Pineda).  Plaintiffs contend that Marcelo Pineda used the lift in the days leading up to the

accident, Pl. Br. 20, but this alone – even if supported by the record – is insufficient to create a

triable issue of fact as to whether Marcelo Pineda was on notice of any defect or malfunction in

the machine.[5]

        2.      12 N.Y.C.R.R. § 23-9.6(a).

Plaintiffs also rely on 12 N.Y.C.R.R. § 23-9.6(a), which requires an "operator" to conduct a "daily inspection" of an "aerial basket," which should include, *inter alia*, a review of the "[b]oom and basket for cracks and abrasions" and a test of the "basket controls . . . to make sure that they are in proper working order." If a defect or malfunction is found during an inspection, Section 23-9.6(a) requires that defect or malfunction to be "corrected before [the] aerial basket is placed in operation."[6] Plaintiffs argue that "[n]o one ever performed the inspections that were required" by the regulation, that there "are no records of daily inspections performed," and that "[n]one of the workers was ever instructed to inspect the lift each day." Plaintiffs' Br. at 13.

The plain language of the regulation, however, requires the *operator* of the machine to conduct the daily inspection. Mr. Corral testified that he was the only person who used the lift on the day of his accident, see Plaintiffs' Ex. 21, 67:19-21, and thus it was *his* duty to inspect the

---

[5] Even if the *hole* in the joystick was obvious, and even if there was admissible evidence that Marcelo Pineda seen the joystick before Corral's accident, it is not clear that the hole itself would have signaled any malfunction with the machine's lockout safety mechanism.

[6] The Court finds that section 23-9.6(a) mandates "a distinct standard of conduct," and does not simply recite "common-law safety principles." Misicki, 12 N.Y.3d at 521, 882 N.Y.S.2d 375, 909 N.E.2d 1213. For that reason, the regulation is "specific" enough to support liability under Labor Law § 241(6). See Scott v. T. Moriarty & Son, Inc., 2010 N.Y. Slip. Op. 30966U, 2010 N.Y. Misc. LEXIS 1873 (Sup. Ct. N.Y. Cnty. Apr. 19, 2010).

equipment.[7] Defendants cannot be held liable for Corral's failure to comply with the regulation. Compare Scott v. T. Moriarty & Son, Inc., 2010 N.Y. Slip. Op. 30966U, 2010 N.Y. Misc. LEXIS 1873 (Sup. Ct. N.Y. Cnty. Apr. 19, 2010) (noting that plaintiff used machine along with co-worker, and thus was not sole "operator" of machine).

> D.     New York State Labor Law § 200 and Common Law Negligence.

Plaintiffs also allege that defendants' actions were negligent and in violation of New York State Labor Law § 200. Section 200 "is a codification of the common law duty on the part of landowners and general contractors to maintain a safe workplace." Lamela, 560 F.Supp.2d at 221. "As a result, it is appropriate to analyze [] common law and § 200 claims simultaneously." Id.; see also Kaczmarek v. Bethlehem Steel Corp., 884 F. Supp. 768, 774 (W.D.N.Y. 1995).

As a threshold matter, plaintiffs must establish that each defendant had "[b]oth control and notice – either actual or constructive." Id. (citing Comes v. New York State Elec. and Gas Corp., 82 N.Y.2d 876, 609 N.Y.S.2d 168, 631 N.E.2d 110 (1993)).

An "implicit precondition" to liability under section 200 is "authority to control the activity bringing about the injury." Comes, 82 N.Y.2d at 877, 609 N.Y.S.2d 168, 631 N.E.2d 110 (quoting Russin v. Picciano & Son, 54 N.Y.2d 311, 317, 445 N.Y.S.2d 127, 429 N.E.2d 805

---

[7] Plaintiffs claim that Corral "had been working in the machine with Elmer" on the day of his accident, Pl. Br. at 11, but that statement is contradicted by the testimony of both Corral and Elmer Pineda. Plaintiffs' Ex. 21, 67:19-21 ("Q. Was anybody with you in the basket on the day of your accident, before it happened? A. No."); see also Plaintiffs' Ex. 5, 14:23-25. It is also inconsistent with plaintiffs' own 56.1 statement. See Pl. 56.1 ¶¶ 73, 75 (on day of accident, Corral was operating the work platform, while Elmer Pineda was bringing steel girts to him).

(1981)).  "Where the alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under Labor Law § 200."  Id.

"An owner or general contractor does not supervise or control the performance of the work for the purposes of § 200 merely by presenting ideas and suggestions, making observations and inquiries, and inspecting the work."  Lamela, 560 F.Supp.2d at 221 (quoting Poulin v. E.I. DuPont DeNemours and Co., 883 F. Supp. 894, 899 (W.D.N.Y. 1994)).  "Absent any evidence that [the accused party] gave anything more than general instructions as to what needed to be done, as opposed to how to do it, [they] cannot be held liable under § 200 for common law negligence."  Id. (quoting O'Sullivan v. IDI Const. Co., 28 A.D.3d 225, 226, 813 N.Y.S.2d 373 (1st Dep't 2006), aff'd, 7 N.Y.3d 805, 822 N.Y.S.2d 745, 855 N.E.2d 1159 (2006)).

There is no evidence to support an inference that Suffolk County exercised any control over the construction operation.  The County was merely the owner of the property, which it leased to The Outer Marker.  Pl. 56.1 Stmt., ¶ 2.

Plaintiffs allege that Richard Mailand was "present at the construction site almost every day," and that he "held one safety meeting with the hangar construction crew."  Pl. 56.1 Stmt., ¶¶ 50, 52.  But Mailand's "presence at the worksite" is insufficient; plaintiffs must show a "specific exercise of control over the particular condition that gave rise to [the] incident."  Lamela, 560 F.Supp.2d at 221.  The fact that Mailand may have given the crew members "general instructions" is also insufficient.  Id.  According to Corral, it was Marcelo Pineda who gave him instruction on how to perform the job, not Mailand.  Plaintiffs' Ex. 21, 38:9-38:11.  Similarly, Elmer Pineda testified that he never observed Mailand giving any instruction to the crew

13

members.  Plaintiffs' Ex. 5, 58:19-59:8; see also Plaintiffs' Ex. 1, 50:7-22.  I therefore find that

there is no genuine issue of fact as to whether The Outer Marker or Park Line exercised the sort

of control over Corral's work that could support a finding of liability: summary judgment as to

this claim is appropriate, and analysis of the issue of notice is unnecessary.  See Wojcik v. 42nd

Street Development Project, 386 F.Supp.2d 442, 458 n. 16 (S.D.N.Y. 2005).

Based upon the foregoing, the Court need not reach the merits of the negligence claim as

to the moving defendants, and summary judgment as to the third cause of action is granted.


E.      Loss of Consortium.


The complaint alleges that, as a result of the accident, Corral's wife, Maria Urena, "was

deprived of the society, support, services and consortium of her husband; was required to travel

back and forth to New York; and has been otherwise damage [sic]."  Compl. ¶ 58.  Under New

York law, a claim for loss of consortium "is a derivative action and, as such, its viability is

dependent on the viability of a primary cause of action . . . ."  Jones v. United States, 408

F.Supp.2d 107, 126-27 (E.D.N.Y. 2006) (quoting Panczykowski v. Laborers Int'l Union of N.

Am., No. 97-CV-036A, 2000 WL 387602, at *14 (W.D.N.Y. Mar. 31, 2000)).  As the

defendants' motions for summary judgment are granted, the derivative fourth cause of action is

also dismissed as to The Outer Marker, Park Line, and the County.

III.    Conclusion


For the foregoing reasons, defendants' motions for summary judgment are granted in their

entirety.  The parties' outstanding motions in limine [Docket Nos. 145, 146, 148, 153, 154] are

denied as moot.



**SO ORDERED.**


_____
Sandra J. Feuerstein
United States District Judge


Dated:        September 20, 2011
              Central Islip, NY



15