UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RODOLFO URENA CORRAL and
MARIA URENA,

                Plaintiffs,

         - against -                        **ORDER**
                                                10-CV-1162 (SJF) (ARL)

THE OUTER MARKER LLC,
GLOBAL STEEL, INC.,
THE COUNTY OF SUFFOLK,
JAMIN JACKSON d/b/a JACKSON STEEL,
CESAR PINEDA d/b/a HORIZON ERECTORS, and
PARK LINE ASPHALT MAINTENANCE INC.,

                Defendants.
----------------------------------------------------------------X

FEUERSTEIN, J.

By order dated September 20, 2011, the Court granted summary judgment to defendants Park Line Asphalt Maintenance, Inc. ("Park Line"), the Outer Marker LLC ("the Outer Marker") (together, "the Outer Marker defendants"), and the County of Suffolk. [Docket Entry No. 172]. Plaintiffs subsequently discontinued the action with respect to defendant Jamin Jackson d/b/a Jackson Steel ("Jackson"). [Docket Entry No. 184].

The Outer Marker defendants have asserted cross-claims against Jackson, seeking indemnification for the attorneys' fees they have incurred in connection with defending this action. [Docket Entry No. 20]. Presently before the Court are: (1) Jackson's motion for summary judgment with respect to the Outer Marker defendants' indemnification cross-claims [Docket Entry No. 193]; and (2) Jackson's motions in limine to preclude the introduction of

1

certain evidence and testimony at trial [Docket Entry Nos. 188, 205]. For the reasons that follow, Jackson's motion for summary judgment is granted, and Jackson's motions in limine are denied as moot.

I.  Jackson's Motion for Summary Judgment.

   A.  Background

Plaintiff Rodolfo Urena Corral was a member of a construction crew building large metal frame airplane hangars at the Francis S. Grabeski Airport in Westhampton Beach, New York. Plaintiff alleges that he was injured at the worksite on November 28, 2009, while using defective equipment. The factual background and procedural history of this case are discussed in the Court's orders dated September 1, 2011 and September 20, 2011. [Docket Entry Nos. 144, 172].

Park Line was the general contractor for the construction project, and the Outer Marker was created for the purpose of leasing the land and constructing the airplane hangars. Both entities are owned by Richard Mailand and Robert Mailand. Richard Mailand hired Jackson to erect the two hangars; Jackson subcontracted another party to perform the labor.

On August 28, 2009, Richard Mailand, as "Owner," executed a written contract outlining the terms of the agreement with Jackson. Jackson Ex. Q [Docket Entry No. 193-18] (the "Hangar Contract"). Pursuant to the Hangar Contract, Jackson was to erect two (2) buildings over the course of eight (8) to ten (10) weeks. Id. at p. 1. The Hangar Contract did not provide for the indemnification of either party, see id., although it stated: "Erector [i.e., Jackson] will supply workers [sic] compensation and general liability insurance to cover Erector's employees."

2

Id. at ¶ 13.

On January 12, 2010, more than one (1) month after the November 28, 2009 accident occurred, Jackson signed a contract dated "October 1, 2009" and titled "Blanket Insurance/Hold Harmless Indemnity Agreement." See Jackson Ex. S [Docket Entry No. 193-20] (the "Indemnity Agreement"). The Indemnity Agreement states, in pertinent part:

> "Please note that all contracts, purchase orders, or proceed orders issued to you *from this date forward* are deemed to include the following insurance requirements and indemnifications: . . . [t]o the fullest extent permitted by law the Subcontractor agrees to indemnify, defend and hold harmless The Outer Marker LLC . . . from any and all claims, suits, damages, liabilities, professional fees, including attorney's fees, costs court costs [sic], expenses and disbursements related to . . . personal injuries . . . arising out of or in connection with or as a consequence of the performance of the Work of the Subcontractor under this agreement . . . ."

Id. (emphasis added).

The Outer Marker defendants argue that this contract requires Jackson to indemnify them for the attorneys' fees they have incurred in defending this action. Brief in Opposition to Summary Judgment [Docket Entry No. 195] ("Opp.") at 1. Jackson argues that he only agreed to indemnify The Outer Marker with respect to future agreements, not with respect to the earlier August 28, 2009 Hangar Contract.[1] Memorandum in Support of Summary Judgment [Docket Entry No. 193-25] ("Jackson Mem.") at 5-8. Jackson now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

---

[1] Jackson further argues that he is not required to indemnify Park Line because Park Line is not a party to the Indemnity Agreement. Jackson Mem. at 12.

3

B.  Summary Judgment Standard.

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted).

"A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. * * *. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted).

4

The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible * * *, or upon the mere allegations or denials of the [nonmoving] party's pleading." Id. (internal quotation marks and citations omitted).

C. Analysis

Jackson's motion raises two arguments: (1) the Indemnity Agreement did not apply to losses arising from the accident at issue; and (2) Park Line is not entitled to indemnification because it is not party to the Indemnity Agreement. Jackson's Memorandum of Law [Docket Entry No. 193-25] ("Jackson Mem.") at 5-12. Since the first issue is dispositive, the Court need not reach the second.

"Where a 'contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence.'" RJE Corp. v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003) (quoting De Luca v. De Luca, 300 A.D.2d 342, 342, 751 N.Y.S.2d 766, 766 (2d Dep't 2002)). "When the question is a contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992). "Where the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate . . . ." Id. (citations omitted).

Ambiguous language is defined as "that which is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire

integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Palmieri v. Allstate Ins. Co., 445 F.3d 179, 191 (2d Cir. 2006) (quoting Albany Savings Bank, FSB v. Halpin, 117 F.3d 669, 673 (2d Cir. 1997)). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989). "If the language unambiguously conveys the parties' intent, extrinsic evidence may not properly be received, nor may a judicial preference be interjected since these extraneous factors would vary the effect of the contract's terms." Seiden Assocs., 959 F.2d at 428.

Furthermore, "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." Tonking v. Port Auth. of N.Y. & N.J., 3 N.Y.3d 486, 490, 787 N.Y.S.2d 708 (2004) (quoting Hooper Assocs. v. AGS Computers, Inc., 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365 (1989)). Where "the language of the parties is not clear enough to enforce an obligation to indemnify," the Court will not "rewrite the contract and supply a specific obligation the parties themselves did not spell out." Id.

Here, the clear and unambiguous language of the contract provides that Jackson will indemnify the Outer Marker with respect to "all contracts, purchase orders, or proceed orders issued to you *from this date forward* . . . ." Ex. S at 1. Although the parties dispute whether "this date" refers to October 1, 2009 – the date printed on the contract's first page – or January 12, 2010 – the date Jackson signed the contract – this dispute is ultimately irrelevant because the

Hangar Contract was "issued to" Jackson on August 28, 2009, well before either date.[2]
Therefore, the Hangar Contract was not a "contract[] . . . issued to [Jackson] from [either October 1, 2009 or January 12, 2010] forward."

Contrary to the Outer Marker defendants' argument, the plain language of the Indemnity Agreement is not rendered nonsensical simply because the parties had not entered into contracts for future work at that time. In fact, the language of the Indemnity Agreement itself contemplates a continuing business relationship between the parties, as it states that the contract "will be updated on a yearly basis." Ex. S at p. 3.

Furthermore, the contract does not state that it applies retroactively, and there is nothing to suggest that it was intended to have retroactive effect. The agreement's express terms state that it applies to "*all* contracts . . . *from this date forward.*" See Akhenaten v. Najee LLC, No. 07 CV 970, 2010 WL 305309, at *2 (S.D.N.Y. Jan. 26, 2010) ("An indemnity agreement cannot be held to have a retroactive effect unless by its express words or necessary implication it clearly appears to be the parties' intention to include past obligations.").

The Outer Marker defendants do not identify any relevant ambiguity in the text of the written contract, but argue that the Court should look to the parties' "words and deeds." See Opp. at 5. However, the Court need not consider extrinsic evidence in the face of clear and unambiguous contractual language. See, e.g., Lockheed Martin Corp. v. Retail Holdings, N.V.,

---

[2] Although the Outer Marker defendants argue that "the only fair and reasonable interpretation of 'issued to you' is that the Hangar Contract was 'issued to' Jackson on October 1, 2009," they fail to explain the basis for such an interpretation. See Opp. at 10. Under the only reasonable interpretation of that term, the Court finds that the Hangar Contract was "issued to" Jackson on August 28, 2009, the date on which the agreement was fully executed.

639 F.3d 63, 71 (2d Cir. 2011); Kito v. Bd. of Educ. of William Floyd School Dist., 56 A.D.3d 432, 434 (2d Dep't 2008) ("since . . . the indemnification provision is unambiguous . . . th[e] extrinsic evidence of intent cannot be considered"); State of N.Y. v. SCA Servs., Inc., No. 83 Civ. 6402, 1994 WL 171165, at *3 (S.D.N.Y. Apr. 28, 1994) ("The indemnification provision at issue in this case is not ambiguous, thus there is no need for this Court to consider extrinsic evidence."); Quantum Chem. Corp. v. Reliance Group, Inc., 180 A.D.2d 548, 548, 580 N.Y.S.2d 275 (1st Dep't 1992).

In any event, none of the extrinsic evidence proffered raises an issue of fact regarding the parties' intent or the scope of the parties' agreement. The affidavit of Celia Clancy (the Outer Marker defendants' office manager) states: "I sent the Blanket Insurance/Hold Harmless and Indemnity Agreement to Jamin Jackson by e-mail before construction of the airplane hangars at Gabreski Airport began." [Docket Entry No. 196] at ¶ 3. It does not provide the date on which the agreement was purportedly sent, nor does it contain any additional information regarding the parties' interactions. Furthermore, the fact that Jackson provided a certificate of insurance does not demonstrate that he intended to indemnify the Outer Marker defendants for attorneys' fees relating to the Hangar Contract. See generally McNamee Constr. Corp. v. City of New Rochelle, 29 A.D.3d 544, 817 N.Y.S.2d 295 (2d Dep't 2006).

II. Conclusion

For the foregoing reasons, Jackson's motion for summary judgment [Docket Entry No. 193] is granted, and Jackson's motions in limine [Docket Entry Nos. 188, 205] are denied as moot.

**SO ORDERED.**

/s/
Sandra J. Feuerstein
United States District Judge

Dated:   January 24, 2012
         Central Islip, New York